**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**KAREEM BLOUNT,**                  :

                 **Plaintiff**       :

               **v.**                 :

**B. MASON,** *et al.*,            :

              **Defendants**     :

             **CIVIL ACTION NO. 3:22-0056**

                  **(JUDGE MANNION)**

**MEMORANDUM**

## I. BACKGROUND

On January 11, 2022, Plaintiff, Kareem Blount, an inmate currently confined at the Greene State Correctional Institution, Waynesburg, Pennsylvania, filed the above caption civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1). By Order dated April 13, 2022, Plaintiff's motion for leave to file an Amended Complaint was granted (Doc. 13) and Plaintiff filed an Amended Complaint on April 27, 2022. (Doc. 14). The Plaintiff complains of events which occurred at his former place of confinement, the Mahanoy State Correctional Institution, (SCI-Mahanoy), Frackville, Pennsylvania. Id. The named Defendants are the following SCI-Mahanoy employees: Superintendent Mason; Deputy Superintendents L. White and Stetler; Unit Manager Heenan; and Chief Hearing Examiner Zachary Moslak. Id.

Plaintiff seeks compensatory and punitive damages for violations of his Eighth and Fourteenth Amendment rights, after being placed on the Restricted Release List. Id. Specifically, Plaintiff states that although he has "no diagnosis of serious mental health illness," placing Plaintiff "housed in the restrictive housing unit has a punitive effect." Id. He claims that "using prolong isolation by placing Plaintiff on Restricted Release would subject Plaintiff to risk of serious harm," as the "combination of dehumanizing conditions may lead to an extreme form of isolation manifestly at odds with the 8th Amendment evolving standards of decency." Id. He "would like to point out that prisoners in isolation who have no history of serious mental illness and who are not prone to psychiatric decompensation (breakdown) often develop these disorders as isolation units are virtual incubators of psychosis seeding illness in otherwise health inmates." Id.

Presently before the Court is the Defendants' motion for summary judgment. (Doc. 26). The motion is ripe for disposition. For the reasons that follow, the Court will grant Defendants' motion for summary judgment.

## II.     SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as

- 2 -

to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary

judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. White, 862 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. Id. (citations omitted). However, a party opposing a summary judgment motion must

- 4 -

comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## III.  STATEMENT OF UNDISPUTED FACTS[1]

---

[1] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party]...as to which it is contended that there exists a genuine issue to be tried." M.D. Pa.
*(footnote continued on next page)*

On April 28, 2021, Plaintiff received Misconduct Report No. D178579, charging him with a Class 1 Charge 1 Assault, for assaulting his cellmate. (Doc. 18-3 at 1). Plaintiff was confined to the Restricted Housing Unit (RHU) pending further action by the hearing examiner. Id.

On September 22, 2021, after a unanimous staff vote and the approval of all required parties, Secretary George Little approved Plaintiff's placement on the Restricted Release List (RRL). (Doc. 27-2 at 2, Vote Sheet). An inmate may be placed on the RRL pursuant to the DOC's Administrative Custody Procedures Manual (DC-ADM 802) when the inmate "poses a threat to the secure operation of the facility and where a transfer to another facility or jurisdiction would not alleviate the security concern." Criteria for placing an inmate on the RRL include an assaultive history against staff and/or other

---

L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. Id. Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Unless otherwise noted, the factual background herein is taken from Defendants' Rule 56.1 statement of material facts. (Doc. 27). Plaintiff did not file a response to Defendants' statement of facts in compliance with M.D. Pa. L.R. 56.1 or a statement of material facts to support his own motion for summary judgment. Thus, the Court deems the facts set forth by Defendants to be undisputed. See M.D. Pa. LR 56. 1; Fed. R. Civ. P. 56(e)(2).

inmates. (Doc. 27-3 at 2, DC-Adm 802, Administrative Custody Procedures Policy).

Plaintiff was placed on the RRL due to his extensive history of assaultive behavior towards inmates and staff. (Doc. 27-2 at 2, Vote Sheet). The triggering incident was an assault on April 28, 2021, in which Plaintiff tied up and assaulted his cell mate and threatened to kill his next cell mate. Id. Plaintiff has forty-four (44) misconducts since entering DOC custody in 2003, including four (4) for assault and six (6) for fighting. Id. He has twelve (12) inmate separations, all of which involve violent and/or assaultive behavior. Id. At least 3 of those assaults involved weapons. Id. Based on this history, all relevant DOC officials determined that Plaintiff was a threat to the orderly operation of the facility and that it was necessary to house him in a more restrictive environment. Id.

Inmates on the RRL are housed in administrative custody and are subject to closer supervision, control, and protection than inmates in general population and do not have the privileges available to inmates in general population level housing. (Doc. 27-3 at 2, DC-Adm 802, Administrative Custody Procedures Policy). Placing an inmate on the RRL requires the input of the Unit Manager of the inmate's unit, the Corrections Classification and Program Manager (CCPM), the Deputy Superintendent for Centralized

- 7 -

Services (DSCS), the Deputy Superintendent for Facilities Management (DSFM), the Facility Manager, the Regional Deputy Secretary, and the Executive Deputy Secretary. Id. The final decision is made by the DOC Secretary. Id. A psychological evaluation is required, and the advice of the inmate's counselor and psychologist is considered. Id.

An inmate placed on the RRL may appeal the change in his custody level. Id. Once an inmate is placed on the RRL in administrative custody, the Program Review Committee (PRC) conducts periodic reviews to determine if continued RRL placement is warranted. Id. This review consists of weekly meetings for the inmate with counselors, a status review by the Unit Management Team every 30 days, followed by periodic status reviews every 90 days after the initial 60-day period. Id. Inmates on the RRL are interviewed and examined by a qualified psychologist or psychiatrist at least every 90 calendar days. Id. A full annual review of an inmate's RRL status is conducted by the inmate's counselor and the prison and DOC officials set forth above. Id. Their input and recommendation as to whether the inmate should remain on the RRL is sent to the DOC secretary who makes the final determination. Id.

Plaintiff appealed his placement on the RRL to Superintendent Mason, who, on November 1, 2021, found his placement proper, based on the following:

> I am in receipt of your correspondence appealing your placement on the Restricted Release List (RRL).
>
> Upon review of all relevant information, I could find no policy/procedural errors with regard to your RRL placement. To the contrary, evidence does exist to support the change in status. You have an extensive history of misconducts to include assault and violence; you are a clear threat to the orderly operation of any facility, and prior less restrictive measures have failed.
>
> In accordance with policy, a vote sheet was circulated with the purpose to place you on RRL. It was approved at the institutional level and forwarded to Central Office where it was also approved by the Regional Deputy Secretary, the Executive Deputy Secretary and the Acting Secretary of Corrections.
>
> Based on the aforementioned information, your placement on RRL is appropriate at this time.

(Doc. 27-1 at 2).

On January 11, 2022, Plaintiff, now confined at SCI-Greene, filed the instant action, complaining of his RRL placement at SCI-Mahanoy. (Doc. 1).

## IV. DISCUSSION

Plaintiff's claims are asserted under 42 U.S.C. §1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. §1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."

Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." Albright v. Oliver, 510 U.S. 266, 271 (1994). See also Baker, 443 U.S. at 140; Graham v. Connor, 490 U.S. 386, 394 (1989).

The Amended Complaint alleges a violation of Blount's rights under the Eighth Amendment, which prohibits "cruel and unusual punishment." His other claim is an alleged violation of his procedural due process rights under the Fourteenth Amendment, which prohibits a state actor from depriving any person of "life, liberty, or property, without due process of law."

## 1. Eighth Amendment Claim

Blount alleges that in violation of his Eighth Amendment rights, Defendants kept him, or recommended that he be kept, in solitary

- 10 -

confinement for an extended and unlimited period without penological purpose. He contends that being "housed in the restricted housing has a punitive effect." (Doc. 14 at 2).

Blount was housed in the RHU as of April 28, 2021 and was placed on the RRL on September 22, 2021. Although the record does not indicate Plaintiff's date of release from the SCI-Camp Hill RRL, it appears that he was released from the RRL sometime prior to January 11, 2022, when his complaint was filed, since, at that time, he was housed at SCI-Greene. Construing the facts in the light most favorable to Blount, he was housed in the RHU first on DC and then on AC status for approximately eight months.

The Supreme Court has held that "[i]t is well settled that the decision where to house inmates is at the core of prison administrators' expertise." McKune v. Lile, 536 U.S. 24, 39 (2002). Thus, a transfer of a prisoner to the RHU or RRI alone does not violate the Eighth Amendment. See Williams v. Armstrong, 566 F. App'x 106, 109 (3d Cir. 2014) (because the Eighth Amendment applies only when a deprivation results in the denial of "the minimal civilized measure of life's necessities," placement of prisoner in RHU for 112 days alone, without allegation that he was denied life's necessities, did not state a claim for relief); Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997); Gibson v. Lynch, 652 F.2d 348, 352 (3d Cir. 1981). Nor does mere

placement of an inmate in AC status or on the RRL alone violate the Eighth Amendment. See Bramble v. Wetzel, 2022 WL 55021, at *7 (M.D. Pa. Jan. 5, 2022); Booze v. Wetzel, 2014 WL 65283, at *11 (M.D. Pa. Jan. 8, 2014).

In order to maintain a claim under the Eighth Amendment, a prisoner must show that: (1) he was subjected to a deprivation that was "objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities"; and (2) a prison official must have acted with "deliberate indifference to a prisoner's ... needs," which occurs only if the official "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834, 837 (1994).

To satisfy the objective prong of this test, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Mammana v. Fed. Bureau of Prisons, 934 F.3d 368, 373 (3d Cir. 2019) (quoting Farmer, 511 U.S. at 834). To satisfy the subjective prong of the Eighth Amendment test, an inmate must show that the prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Chavarriaga v. N.J. Dep't of Corrs., 806 F.3d 210, 229 (3d Cir. 2015) (quoting Farmer, 511 U.S. at 847). The inmate "may demonstrate deliberate indifference by showing that the risk of harm was longstanding, pervasive, well documented,

or expressly noted by prison officials in the past such that defendants must have known about the risk." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 259 (3d Cir. 2010) (quoting Farmer, 511 U.S. at 842-43) (internal quotation marks omitted). In evaluating the subjective prong of the Eighth Amendment test, courts also should consider whether officials "had a legitimate penological purpose" behind their conduct. Ricks v. Shover, 891 F.3d 468, 475 (3d Cir. 2018).

Defendants contend that Blount cannot satisfy either factor. They argue that, with respect to the objective factor, despite his allegations, he has not produced any evidence that by his placement in the RHU or on the RRL, he was denied the "minimal civilized measure of life's necessities." See Bramble, 2022 WL 55021, at *8 ("while we recognize that Bramble remained in Administrative Custody on the RRL for over two years before he was returned to the Delaware DOC, Bramble has not set forth any evidence tending to show that his confinement in Administrative Custody denied him 'the minimal civilized measure of life's necessities,' or that there was no legitimate penological objective for his placement in Administrative Custody.") They also argue that there is no evidence that prison conditions posed an unreasonable risk of serious damage to his current or future physical or mental health. In fact, Plaintiff, himself, sates that he does not

- 13 -

have a serious mental health illness. Thus, the record is devoid of any evidence about Blount's mental condition or the effect RHU confinement may have had on him, nor does it demonstrate that Blount's mental health needs were known by Defendants and were ignored.

Moreover, there is no evidence that Plaintiff was denied "the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 835. "Prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." Id. at 832 (citation omitted). There is no evidence of record that Blount did not receive basic necessities. He does not contend that he was unable to shower, did not receive adequate toiletries or clothing, was denied necessary medical care, or that the cell in which he was housed had persistent unsanitary or unsafe conditions.

With respect to the subjective factor, Defendants argue that Blount has not produced evidence that they knew of and disregarded a substantial risk of serious harm to him. The record does not reflect that Blount expressed concerns about the conditions of his confinement during his confinement in the RRL, nor is there any other evidence that any of the Defendants knew of and ignored a substantial risk of serious harm.

- 14 -

To the extent such risk existed, it was clearly outweighed by the DOC's legitimate penological interest in responding to the imminent safety concerns presented by Blount's conduct. He had forty-four (44) misconducts since entered DOC custody, including four (4) for assault and six (6) for fighting, and twelve (12) separations all of which involved violent and/or assaulting behavior. Thus, the uncontroverted record shows that Blount was not transferred to the RRL randomly, but as a result of multiple misconducts for engaging in or encouraging unauthorized activities. These facts, coupled with the absence of any evidence that Blount was deprived of the minimal necessities of life or that any of the Defendants knew and disregarded a serious risk to Blount's health or safety, are fatal to his Eighth Amendment claim. Thus, Defendants' motion for summary judgment must be granted.

## 2. Fourteenth Amendment Claim

The due process analysis starts with determining whether the liberty interest asserted is protected by the Fourteenth Amendment. Montanez v. Sec'y Dep't of Corr., 773 F.3d 472, 482–83 (3d Cir. 2014) (quoting Evans v. Sec'y Pa. Dep't of Corr., 645 F.3d 650, 663 (3d Cir. 2011)); see also Holland v. Rosen, 895 F.3d 272, 297 (3d Cir. 2018) (citations omitted). If it is a protected interest, we must then determine what process is necessary to protect it. Newman v. Beard, 617 F.3d 775, 783 (3d Cir. 2010) (citation

omitted). If the interest is not protected, no process is necessary. Hence, as a threshold matter, the plaintiff must establish that he had a protected liberty interest. See Fraise v. Terhune, 283 F.3d 506, 522 (3d Cir. 2002) (finding that succeeding on a due process claim requires demonstrating that the plaintiff was deprived of a liberty interest).

Prisoners do not enjoy the same liberty interests as others do. See Sandin v. Conner, 515 U.S. 472, 485 (1995). Incarceration "brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Id. (quoting Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 125 (1977)). "To rise to the level of a liberty interest, the right alleged must confer 'freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life'." Williams v. Sec'y Pa. Dep't of Corr., 848 F.3d 549, 559 (3d Cir. 2017) (emphasis in Williams) (quoting Griffin v. Vaughn, 112 F.3d 703, 708 (3d Cir. 1997)). "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montayne v. Haymes, 427 U.S. 236, 242 (1976).

The question is whether Blount has alleged that his three months on the RRL and total eighth months in the RHU imposed an atypical and significant hardship. In making this determination, we consider: "(1) the duration of the challenged conditions; and (2) whether the conditions overall imposed a significant hardship in relation to the ordinary incidents of prison life." Williams, 848 F.3d at 560 (citing Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2017)). Prolonged, indefinite solitary confinement may impose an atypical and significant hardship. Shoats, 213 F.3d at 144.

We first consider the duration of Blount's placement on the RRL and segregation in RHU. There is no bright line defining where the duration of segregation becomes atypical. Williams, 848 F.3d at 561–62. An inmate sentenced to thirty days in disciplinary confinement does not endure such hardship. See Sandin, 515 U.S. at 486; see also Burns v. Pa. Dep't of Corr., 642 F.3d 163, 171 (3d Cir. 2011) (citing Sandin, 515 U.S. at 483-84) (holding that inmates in disciplinary hearings are not entitled to procedural due process because the resulting sanctions do not affect a protected liberty interest). Nor does an inmate in administrative custody for fifteen months. Griffin v. Vaughn, 112 F.3d 703, 708 (3d Cir. 1997). Plaintiff's administrative custody did not exceed fifteen months, and there clearly was an end in sight, as Plaintiff was placed in the RHU after his April 28, 2021 misconduct, placed

on RRL on September 22, 2021 and then transferred to SCI-Greene prior to January 11, 2022. Thus, the length of his confinement in prolonged isolation is not atypical and the Plaintiff does not implicate a due process concern.[2]

See Tilley v. Allegheny Cty. Jail, 2010 WL 1664900, at *3 (W.D. Pa. Feb. 18, 2010) (finding no protected liberty interest where inmate had previously spent less than seventeen months in solitary confinement). As such Plaintiff has failed to establish a due process violation and judgment will be entered in favor of Defendants.

---

[2] To the extent that Plaintiff attempts to create a due process claim by arguing in his brief in opposition that Chief Hearing Examiner Moslak misrepresented to him that he could not appeal his RRL placement, (Doc. 29 at 4), such facts are not expressly set forth in Plaintiff's amended complaint. (See Doc. 14). The Court may not consider such allegations because a plaintiff cannot amend a complaint through the filing of a brief, or through arguments set forth in a brief opposing a dispositive motion. Indeed, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)); cf. Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007) ("[W]e do not consider after-the-fact allegations in determining the sufficiency of [a] complaint under Rules 9(b) and 12(b)(6)."). He may not change the fundamental character of his amended complaint at this late date by arguing new and different claims in response to this motion for summary judgment.

## V. MOTION TO AMEND

On March 30, 2023, after Defendants' motion for summary had been fully briefed, Plaintiff filed a motion for leave to amend, raising new claims and theories of liability that were not raised in his Amendment Complaint. (Doc. 33). Plaintiff "pray[s] that this Court grants Plaintiff permission for leave to file this Amended Complaint to fix and redress all claims as Plaintiff is a *pro se* litigant who was under the impression that all of Plaintiff's claims in his original complaint would carry over as preserved for this Court to address." Id. The Court finds Plaintiff's argument that his original complaint would "carry over" unpersuasive. This Court's April 13, 2022 Order granting Plaintiff's motion to amend, specifically set forth the following:

1. The amended complaint shall be complete, in and of itself, without reference to any prior filings.
2. The Plaintiff's amended complaint shall include any and all Defendants whom the Plaintiff wishes to name in this action.
3. The Plaintiff's amended complaint must specifically state which constitutional right he alleges the Defendant(s) have violated.
4. In accordance with Fed.R.Civ.P. 8(a), the Plaintiff's amended complaint shall set forth a short and plain statement of the grounds upon which the court's jurisdiction depends.
5. In accordance with Fed.R.Civ.P. 10(b), the Plaintiff's amended complaint shall be divided into separate numbered paragraphs, the contents of each of which shall be limited, as far as practicable, to a statement of a single set of circumstances.

- 19 -

6.  In accordance with Fed.R.Civ.P. 8(d), each averment of the Plaintiff's complaint shall be <u>simple</u>, <u>concise,</u> and <u>direct</u>.

7.  The Plaintiff's amended compliant shall contain a short and plain statement of the claim for relief and a demand for a specific judgment.

(Doc. 13). The Rules of Federal Civil Procedure set forth in this Court's April 13, 2022 Order apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure). Consequently, while courts should construe the pleadings of *pro se* litigants liberally, procedural and substantive rules should not be interpreted so as to excuse mistakes by those who proceed without counsel. See McNeil v. U.S., 508 U.S. 106, 113 (1993) ("As we have noted before, 'in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'"). Plaintiff's motion to file a second amended complaint will be denied.

## VI. CONCLUSION

For the reasons set forth above, the Court will grant Defendants' motion for summary judgment, deny Plaintiff's motion to amend, and close the above captioned action.

A separate Order shall issue.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated:  September 26, 2023**
22-0056-01

- 21 -